

DECEMBER   11,   2019

SAMUEL TOMPOE
CECELIA TOMPOE
66 PENWOOD DRIVE
EWING NJ 08618

**LOAN:**   9350946431

Dear Mortgagor(s):

Your request for a **Loan Modification** has been approved.

Enclosed please find three (3) copies of the Loan Modification Agreement and Terms and Conditions. Two of the copies require your signature and are to be returned in the envelope provided, **along with your money order, cashier's check or certified check in the amount of**
   **$135.00** . **Please see the Terms and Conditions for a breakdown of the Total Cash Due. Please retain the third copy for your records.**

IMPORTANT NOTICE: DO NOT sign this document until you are in the presence of a licensed notary public, who will acknowledge your signature. Signing this document before hand will nullify the document and require preparation of a new document, delaying the process.  The modification documents must be signed by all parties, in BLACK INK.  Do not use white-out and do not write in the margins.
Please be sure to closely follow the instructions on the "BORROWER AND NOTARY CHECKLIST" when executing these documents.  Failure to adhere to the instructions may prevent your modification from being processed.

The first modified payment of the principal, interest, taxes and/or insurance in the amount of
   $1,447.90  will be due    1/1/2020 . The total payment, which includes escrowed items (taxes and/or insurance), is subject to change as those amounts change. The escrow account will be analyzed from time to time and you will be notified of changes.

Please be advised that your monthly payment amount is going from    $1,499.53    to    $1,447.90   .



DECEMBER 11, 2019

SAMUEL TOMPOE
CECELIA TOMPOE

LOAN: 9350946431

Please be aware that receiving a permanent Modification may result in the following:
- Possible lower credit score.
- Increase of your unpaid principal balance due to capitalization.
- The extension of the terms of your mortgage.

This agreement will not go into effect until the signed, notarized Loan Modification Agreement, signed Disclosure Statement and cash due amounts are received. Collection and foreclosure actions may continue until those items are received. We must receive the items no later than 12/26/2019. If you do not reply by this date, we will cancel this transaction and assume that you have chosen another method to resolve your account.

You may call the "800" number on the outside of the UPS Package to find your nearest UPS or UPS affiliate drop off site.

Should you have any questions, please call the undersigned at 866-397-5370 X 7467

Sincerely,

JTY
JUNE TAY
SPECIALIST
LOSS MITIGATION DEPT.

Loan No.: 9350946431

# Borrower and Notary Checklist

Please carry this sheet with you when you have your documents notarized. This checklist is being provided to ensure that your loss mitigation documents are correctly executed. If any of the following steps are not completed, or are completed incorrectly, the documents will be returned to you for correction and/or completion.

**\*\* DO NOT WRITE OR INITIAL IN THE MARGIN OF THE DOCUMENTS WHICH ARE THE BLANK SPACES PROVIDED ON THE LEFT, RIGHT, TOP, AND BOTTOM OF THE DOCUMENT \*\***

- Borrower(s) must sign their name(s) exactly as the printed line below the signature line, and appropriately date all documents.
- County, State and date information completed (if applicable) on Borrower's Acknowledgment for each set of documents.
- Notarization date written in by Notary Public when notarizing Borrower's Acknowledgment for each set of documents.
- Notary Public's printed name, signature and title written in by Notary Public when notarizing Borrower's Acknowledgment for each set of documents
- Notary Public's stamp and/or seal placed on Borrower's Acknowledgment when notarizing each set of documents.
- Commission Expiration Date of Notary Public written in on Borrower's Acknowledgment for each set of documents, if required.
- **\*\*DO NOT HAVE DOCUMENTS NOTARIZED BY A FAMILY MEMBER OR A FOREIGN NOTARY\*\***
- Do not cross through any language in the documents.
- All Borrowers, Notaries, and Witnesses, if applicable, must execute the documents on the same day.
- Properties located in Alaska, Texas, and New York: Borrower(s) **MUST** return a copy of his/her driver's license or state issued ID with the enclosed executed documents.

Certain states require witness(es) to your signature. If witness signatures are required on your loan documents, please verify that each witness has signed and printed/typed their name under the signature as indicated. **\*\*BORROWERS CANNOT WITNESS THEIR OWN SIGNATURES. \*\***

**\*\*WITNESS SIGNATURES MUST BE FROM NON-RELATED, DISINTERESTED THIRD PARTIES.\*\***
NOTE: The Lender's Acknowledgment portion of the **loan documents** will be completed by the Lender and **SHOULD NOT** be notarized by your notary public.

## Terms and Conditions of Modification

SAMUEL TOMPOE
CECELIA TOMPOE
66 PENWOOD DRIVE
EWING NJ 08618

LOAN: 9350946431

| | |
|---|---|
| Existing Interest Rate: | 4.6250% |
| Modified Interest Rate: | 3.8750% |
| Maturity date of existing Mortgage: | 11/01/2052 |
| New maturity date of modified Mortgage: | 12/01/2059 |
| Existing principal balance as of JULY 1ST 2017 | $136,304.75 |
| Additions to principal balance: | |
| Accrued interest up to modification effective date: | $15,760.20 |
| Escrow Advanced/Due: | $31,168.42 |
| Foreclosure Fees and Costs: | $1,930.23 |
| Property Preservation Expenses: | $84.00 |
| Piggy-Back Balance: | $60,810.59 |
| Reductions: | |
| Amount Held in Suspense/Restricted Escrow: | ($1,211.22) |

Applied As Follows:

| | | |
|---|---|---|
| Interest | $1,211.22 | |
| TOTAL | $1,211.22 | |

| | |
|---|---|
| Less Deferred Principal Balance due at Maturity: | ($73,446.97) |
| Amortizing Balance: | $171,400.00 |
| New Modified Monthly Payment of Principal and Interest: | $703.08 |
| Estimated Monthly Escrow Payment for Taxes: | $472.50 |
| Estimated Monthly Escrow Payment for Hazard Insurance: | $142.00 |
| Estimated Monthly Escrow for Mortgage Insurance: | $130.32 |
| TOTAL New Modified Monthly Payment: | $1,447.90 |

Be advised that your monthly payment amount is going from $1,499.53 to $1,447.90
*Please see Modification Documents.

| | |
|---|---|
| Estimated Recording Fee*: | $135.00 |
| JANUARY 1ST 2020 payment, due JANUARY 1ST 2020: | $1,447.90 |
| **TOTAL CASH DUE FROM MORTGAGOR (S):** | $135.00 |

Please review all of the above information carefully, if you are in agreement with the terms as stated above please acknowledge same by signing and dating this form. This executed form must be returned with the executed modification agreement in order to be processed.

*Please note that the Estimated Recording Fee is an ESTIMATION ONLY, and the Mortgagor(s) will be responsible for any Recording Fees above the estimate provided.

Mortgagor(s):

_____    12-30-19
SAMUEL TOMPOE                    Date

_____    12-30-19
CECELIA TOMPOE                   Date

**After Recording Return To:**
RUTH RUHL, P.C.
Attn: Recording Department
12700 Park Central Drive, Suite 850
Dallas, Texas 75251

_____[Space Above This Line For Recording Data]_____

Loan No.: 9350946431
Freddie Mac Loan No.: 0484351958

# LOAN MODIFICATION AGREEMENT

This Loan Modification Agreement ("Agreement"), between   Samuel Tompoe and Cecelia Tompoe

("Borrower/Grantor")
and Santander Bank, N.A. f/k/a Sovereign Bank, whose address is 1 Corporate Drive, Suite 360, Lake Zurich, Illinois 60047

("Lender/Grantee"),
is effective December 6th, 2019         , and amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated November 26th, 2007         and recorded in Book/Liber 10003       , Page 0098     , Instrument No. RD 2007 053740       , of the Official Records of Mercer County, New Jersey      , and (2) the Note bearing the same date as, and secured by the Security Instrument, which was entered into as security for the performance of the Note and encumbers the real and personal property described and defined in the Security Instrument as the "Property," located at 66 Penwood Drive, Ewing, New Jersey 08618                                                                                                                                                                                     ,

**NEW JERSEY FREDDIE MAC LOAN MODIFICATION AGREEMENT**                                                              Page 1 of 8
8/19

Loan No.: 9350946431

the real property described being set forth as follows:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

In consideration of the agreements made in this Agreement, and other good and valuable consideration which the parties agree they have received, including, but not limited to avoiding foreclosure and its related costs, the Borrower and Lender agree to modify the terms of the Note and Security Instrument (the "Loan Documents") as set forth in this Agreement. The Borrower and the Lender also agree that the provisions of this Agreement supersede and replace any inconsistent provisions set forth in the Loan Documents and any prior modification, forbearance or other loss mitigation agreement.

1. **BORROWER REPRESENTATIONS AND COVENANTS.** I certify and represent to Lender and otherwise agree and covenant with Lender that:

(a) I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient readily available financial assets to make my monthly mortgage payments now or in the near future;

(b) There has been no impermissible change in the ownership of the Property since I signed the Loan Documents;

(c) I have provided required documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify mortgage assistance);

(d) All documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for this modification, are true and correct;

(e) I have made or will make all payments required under a trial period plan and have complied with all other requirements of such trial period plan; and

(f) I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that my mortgage loan as modified by this Agreement is in first lien position and is fully enforceable upon modification and that if, under any circumstance and notwithstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

2. **ACKNOWLEDGEMENTS AND PRECONDITIONS TO MODIFICATION.** I understand and acknowledge that:

(a) If, prior to or as of the Modification Effective Date, the Lender determines that any of my certifications or representations set forth in paragraph No.1 is untrue or any covenant or agreement set forth above in paragraph No.1 has not been performed, the Loan Documents will not be modified and this Agreement, except for this paragraph is null and void and of no legal effect; and

(b) The Loan Documents will not be modified by this Agreement unless and until both (i) the Lender has accepted this Agreement as solely evidenced by Lender's signature on this Agreement or on a copy of this

Loan No.: 9350946431

Agreement containing Lender's signature, and (ii) the Modification Effective Date has occurred and the Lender will not be obligated or bound to make any modification of the Loan Documents if any certification or representation set forth above in paragraph No.1 is untrue or any covenant or agreement set forth above in paragraph No.1 has not been performed.

### 3. CAPITALIZATION AMOUNT.

I acknowledge that interest has accrued but has not been paid and the Lender also has incurred, paid or otherwise advanced taxes, insurance premiums and other expenses necessary to protect or enforce its interest in the Loan Documents and that such interest, costs and expenses, in the total amount of $ 108,542.22 , have been added to the principal balance owed under the Note and secured by the Security Instrument.

### 4. UNPAID PRINCIPAL BALANCE.

As of January 1st, 2020 the amount payable under the Loan Documents is U.S. $ 244,846.97 (the "Unpaid Principal Balance"), consisting of the unpaid amount(s) loaned to Borrower by Lender plus the Capitalization Amount set forth in paragraph No.3.

### 5. BORROWER'S PROMISE TO PAY.

I promise to pay the Unpaid Principal Balance plus interest charged in accordance with paragraph No.6 to the order of Lender in accordance with the payment schedule set forth in paragraph No.6.

### 6. INTEREST.

$73,446.97 of the Unpaid Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make payments on this amount. The Unpaid Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $171,400.00. Interest at the rate of 3.875% will begin to accrue on the Interest Bearing Principal Balance as of December 1st, 2019 and the first new monthly payment on the Interest Bearing Principal Balance will be due on January 1st, 2020. The payment schedule for the modified Loan is as follows:

| Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|
| 3.875% | 12/01/2019 | $703.08 | $744.82 , may adjust periodically | $1,447.90 , may adjust periodically | 01/01/2020 | 480 |

*The monthly escrow payment amount may be adjusted periodically in accordance with applicable law and therefore I understand that my total monthly payment may change accordingly.

I agree to pay in full the Deferred Principal Balance and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property; (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the new Maturity Date.

### 7. MATURITY DATE.

If on December 1st, 2059 (the "Maturity Date"), I still owe amounts under the Loan Documents, as amended by this Agreement, I will pay these amounts in full on the Maturity Date.

Loan No.: 9350946431

### 8. TRANSFER OF THE PROPERTY OR BENEFICIAL INTEREST IN BORROWER.

As used in this paragraph, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser or other third party.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed and, within such period, Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

### 9. SECURITY INSTRUMENT.

I will comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of the Security Instrument, including without limitation, my covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No.4:

(a) all terms and provisions of the Loan Documents (if any) providing for, implementing, or relating to, adjustable, step or simple rate of interest payable under the Note; and

(b) all terms and provisions of any adjustable rate rider, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Loan Documents and that contains any such terms and provisions as those referred to in paragraph No.10(a).

### 10. ADDITIONAL AGREEMENTS. I understand and agree that:

(a) Escrow. If applicable, by this paragraph, Lender is notifying Borrower that any prior waiver by Lender of Borrower's obligations to pay Lender Funds or any or all Escrow Items is hereby revoked, and Borrower has been advised of the amount needed to fully fund the Escrow Items.

(b) Funds for Escrow Items. If applicable, I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the

Loan No.: 9350946431

Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

(c) **Default.** I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement; that all the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument also apply to default in the making of the payments due under this Agreement; and that I will be in default if, during the loss mitigation application process, I or any persons or entities acting at my direction or with my knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with my mortgage loan or application for mortgage assistance, such material representations include, but are not limited to, representations concerning my income, hardship, Property, and occupancy of the Property;

(d) **Loan Documents Remain in Full Force and Effect Except as Modified.** All covenants, agreements, stipulations, and conditions in the Loan Documents shall be and remain in full force and effect, except as modified by this Agreement, and none of the Borrower's obligations or liabilities under the Loan Documents shall be diminished or released by any provisions of this Agreement, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Loan Documents, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Loan Documents are expressly reserved by Lender. The Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed;

(e) **Debt is not Satisfied or Released.** Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Loan Documents;

(f) **Modification Costs and Expenses of Lender.** I agree that all costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender;

(g) **Assignment of Agreement.** I understand that I may not assign the Loan Documents or this Agreement to a buyer or transferee of the Property and, unless expressly agreed to by Lender in writing, such buyer or transferee will not be permitted to assume the Loan;

(h) **Execution of Documents.** I agree to make and execute such other documents or papers as may be necessary or required to: (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this agreement and which, if approved and

NEW JERSEY FREDDIE MAC LOAN MODIFICATION AGREEMENT

Page 5 of 8
8/19

Loan No.: 9350946431

accepted by Lender, shall bind and inure to the heirs, executors, and administrators, of the Borrower or the Borrower's estate. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under any of Lender's available modification programs. Borrower represents that all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing;

(i) **MERS.** Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. If my loan has been registered with MERS, I understand and agree that MERS has only legal title to the interests granted by the Borrower under the Loan Documents and this Agreement and MERS is acting solely as nominee for Lender and Lender's successors and assigns, and as such, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan;

(j) **Lost or Destroyed Documents.** That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this paragraph shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement;

(k) **Mortgage Insurance Premiums.** That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the Capitalization Amount which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Unpaid Principal Balance; and

(l) **Consent to Disclosure of Information.** Borrower authorizes Lender, and Lender's successors and assigns, to share Borrower information including, but not limited to (i) name, address, and telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, (v) payment history, (vi) account balances and activity, including information about any modification or foreclosure relief programs, with Third Parties that can assist Lender and Borrower in obtaining a foreclosure prevention alternative, or otherwise provide support services related to Borrower's loan. For purposes of this paragraph, Third Parties include a counseling agency, state or local Housing Finance Agency or similar entity, any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with Borrower's loan. Borrower consents to being contacted by Lender or Third Parties concerning mortgage assistance relating to Borrower's loan at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Third Parties.

[ ] By checking this box, Borrower also consents to being contacted by text messaging.

---

**NEW JERSEY FREDDIE MAC LOAN MODIFICATION AGREEMENT**                                   Page 6 of 8
                                                                                          8/19

Loan No.: 9350946431

| Date | Borrower |
|---|---|
| 12-30-19 | Samuel Tompoe (Seal) —Borrower |
| 12-30-19 | Cecelia Tompoe (Seal) —Borrower |
| | (Seal) —Borrower |
| | (Seal) —Borrower |

## BORROWER ACKNOWLEDGMENT

State of **New Jersey** §
§ ss.
County of **Mercer** §

I certify that on **December 30th**, **2019**, Samuel Tompoe and Cecelia Tompoe personally came before me and stated to my satisfaction that this person (or if more than one, each person):

(a) was the maker of the attached document; and
(b) executed this document as his or her own act.

HarPatel

HARSHADKUMAR PATEL
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 2/5/2024
12/30/2019

Name: Harshadkumar Patel
Type or Print Name of Notary
Title: Notary Public
My Commission Expires: 02/05/2024

ACKNOWLEDGMENT (NEW JERSEY)                                        Page 7 of 8